UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRIS C. STREETER, M.D. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |

CIVIL ACTION NO.

COMPLAINT FOR DECLARATORY RULINGS AND INJUNCTIVE RELIEF UNDER
42 U.S.C. § 1983

TABLE OF CONTENTS

1. Jurisdiction and Venue...........................................................................................1
2. Defendant...............................................................................................................1
3. Statement of Case...................................................................................................1
4. Relevant Procedural History...................................................................................4
5. Balance Between Rule 8(B) and Sufficient Facts for Relief...................................4
6. 2006........................................................................................................................4
7. Trial Exhibit 87......................................................................................................7
8. Purchase and Sale of Cambridge Properties...........................................................9
9. 2008......................................................................................................................10
10. 2009.....................................................................................................................10
11. 2012-2014............................................................................................................11
12. 2015.....................................................................................................................13
13. 2016.....................................................................................................................14
14. 2018.....................................................................................................................14
15. 2019.....................................................................................................................15
16. April 201..............................................................................................................20
17. 2020.....................................................................................................................21
18. 2021.....................................................................................................................22
19. 2022.....................................................................................................................23
20. 2023.....................................................................................................................25
21. Bias in Addressing Complaints for Contempt......................................................27
22. Deference Afforded a Trial Judge........................................................................29
23. Bowring Two-Step Process and Legal Custody....................................................30
24. Judicial Oversite Is Not Functioning in Probate Court........................................31

25. Failure to Address Misconduct Under Rule 2.12.......................................32
26. Argument.....................................................................................................33
27. Overview of Legal Argument.......................................................................33
28. 5 USC § 702 Right to Review......................................................................33
29. Institutional Betrayal...................................................................................34
30. Fraud Against the Court...............................................................................35
31. Declaratory Relief Not Available...............................................................37
32. Criteria for Conspiracy................................................................................38
33. Gender Bias..................................................................................................39
34. Conspiracy of Five Judges..........................................................................43
35. Equal Protection Violated............................................................................46
36. Violation of Judicial Code of Conduct.......................................................47
37. Abuse of Judicial Discretion.......................................................................48
38. Pleadings with Particularity........................................................................48
39. 14th Amendment Rights Denied Due to March 10, 2022 Rulings........................49
40. Conclusions of Law......................................................................................51
41. Requested Relief..........................................................................................52
42. Declaratory Rulings.....................................................................................52
43. Correction of Division of Marital Estate Assets.........................................54
44. Correction of Trust Assets...........................................................................57
45. Inequitable Treatment and Failure to Enforce Rulings...............................58
46. Equity Reduction Re: Delay in Selling Lakeview Property.........................58
47. Legal Fees....................................................................................................58
48. Injunctive Relief...........................................................................................59

STATUTES

Massachusetts Civil Procedure
Rule 5 (e)
Rule 6 (a)
Rule 6 (b)
Rule 6 (d)
Rule 9
Rule 26: Discovery (b)(1)
Rule 52:
Rule 55 (d):
Rule 60: Relief from a Judgment or Order
Rule 62 (a)
Rule 62 (b)
Rule 62 (d)
Rule 77 (d)
Standing Order 2-99
Code of Judicial Conduct, Supreme Judicial Court Rule 3:09
Code of Judicial Conduct Rule 1.1
Code of Judicial Conduct Rule 2.1

Code of Judicial Conduct Rule 2.2
Code of Judicial Conduct Rule 2.3
Code of Judicial Conduct Rule 2.6
Code of Judicial Conduct Rule 2.7
Code of Judicial Conduct Rule 2.12
Code of Judicial Conduct Rule 2.15
M.G.L. 203E Article 1 § 103, 105, 110, 805,
M.G.L. 203E Article 3 § 303
M.G.L. 208 § 34
M.G.L. 209A
Appellate Procedure Rule 4(1)(C)
5 U. S. C. § 701
5 U. S. C. § 703
5 U. S. C. § 704
5 U. S. C. § 705
5 U. S. C. § 706
42 U. S. C. § 1981 (a) Statement of Equal Rights
42 U. S. C. § 1981 (c) Protection Against Impairment
42 U. S. C. § 1982
42 U. S. C. § 1983
42 U. S. C. § 1985 (3) Depriving persons of rights or privileges
42 U. S. C. § 1986
U.S.C. § 241 Conspiracy
14th Amendment

CASES

Anderson v. Bessemer City, N.C., 470 U.S. 564, 572 (1985)....................................37
Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021)...............................................38
Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)..................................................39
Bell Atlantic Corp. v. Twombly, 550 US (2007).......................................…..4,16,19
Bolduc v. Town of Webster, 629 F.Supp.2d 132, 150-51........................................39
Bradley v. Fisher, 13 Wall., 335, 80 U. S. 351. Pp. 435 U. S. 355-357.........................47
Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990)........................................18
Bowen v. Massachusetts, 487 US 892 (1988).......................................................4
Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)...................................37
Burbank v. Town of Hubbardston, 146 F.Supp.3d 402, 405 (D. Mass. 2015)...................39
Commonwealth v. Tradition (N. America) Inc., 91 Mass. App. Ct. 63, 70 (2017).............18
Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)........................19
Davidson v. Davidson, 19 Mass. App. Ct. 364.......................................................6
Donovan V. Phillip Morris USA, Inc., 455 Mass. 215, 288 (2000)...............................18
Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)...........................39
Foley v. Lowell Div of the Cis court Dep't., 398 Mass. 800, 802 (1986)........................23
Griffin v. Breckenridge, 103, 403 U.S. 88 (1971)..................................................38
Guardianship of B. V.G., 474 Mass. 315, 321 (2016)...........................................31
Harihar v. U.S. Bank Nat'l Ass'n, No. 15-CV-11880-ADB (2017)..............................17
Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 Inc.,

455 Mass. 215, 228(2000)................................................................2, 36

Lauricella v. Lauricella 565 NE 2d 436 - Mass: Supreme Judicial Court (1991)...........6

Leatherman v. Tarrant County N. I. C. Unit, 507 U.S. 163, 164 (1993).......................19

Liberstad v. Welch 53, F3d 428,449 (1st Cir 1995)........................................39

MacDonald v. MacDonald 407 Mass. 196, 202 n. 1 0 (1990) 405-406............... .....13,,42

Matthews v. Appeals Court, 444 Mass. 1007, 1008 (2005)................................23

Munshani v, Signal Lake Venture Fund II, LP, 60 Mass. App Ct. 714, 719 (2004)....... ...36

Perrier v.Commonwealth,489 Mass. 28, 30 (2022)........................................23

Pierson v. Ray, 386 U.S. 547, 554 (1967).....................................................47

Rockdale Mgmt. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 638 N.E.2d 29
(MA Supreme Court 1994)................................................................36

Sabin v. Sabin, 435 Mass. 369. 405 (2002)............................................13. 42

S.L. v. R.L., 55 Mass. App. Ct. 880.........................................................6

Stump v. Sparkman, 435 U.S. 349 (1978)...................................................47

Szymanski v. Bos. Mut. Life Ins., 56 Mass. App. Ct. 367, 370 (2002).........................18

Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)..........................................46

Watson v. Perez, 168 F. Supp. 3d 365,373 (D of Mass 2016)..................................39

1.      The Plaintiff, Chris Streeter, respectfully requests this Court to hold a jury trial to

        issue declaratory rulings and injunctive relief as allowed under 42 U.S.C. § 1981-

        1986 and the Administrative Procedure Act, 5 U.S.C. § 701-706 for the actions of the

        Massachusetts Probate Court (hereinafter the Probate Court) that deprived the

        Plaintiff of her 14th Amendment Rights.

## JURISDICTION AND VENUE

2.      Under 42 U.S.C. §1983 (hereinafter §1983) the Federal District Court has jurisdiction

        due to the Probate Courts violation of the Plaintiff's 14th Amendment rights.

3.      The venue in the Federal District of Massachusetts is proper as the Plaintiff' lives at

        47 Farmcrest Avenue,  Lexington, Massachusetts. The cause of the actions arose in

        the Cambridge Probate and Family Court, Cambridge Massachusetts and the

        Middlesex Probate Court of Massachusetts, Woburn Massachusetts.

## THE DEFENDANT

4.      This complaint list the United States of America as the Defendant as allowed Revised

        5 U.S.C. §702 to avoid issues related to judicial immunity.

## STATEMENT OF CASE

5.      The allegation of fraud against the court in the Streeter v. Streeter Divorce

        (MI01D0619DV) includes the following. The erroneous removal of marital assets

        from the martial estate for the purposes of division with the use of Divorce Trial

        Exhibit 87 (hereinafter "Exhibit 87"), a document alleged to be fraudulent and made

        by an attorney. A sentient plain by the Plaintiff's ex-husband, Frank S. Streeter, II,

        and his divorce and appeal attorneys to mislead the court using Exhibit 87 that was

1

successful, and consistent with of fraud against the court such that they should receive no benefit. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 The charges include the use of trust assets by the Mr. Streeter that he has denied using since 2003 such that these assets will not be available for the parties children as found by the Trial Judge.

6.    The Streeter v. Streeter Divorce has over 500 entries, consistent with the failure of the Probate Court to fairly, equitably, efficiently and legally adjudicate due to the alleged conspiracy to cover up fraud against the court and invidious discrimination. The failure to address the fraud against the court is alleged to have undermined the integrity of the judiciary. The way to end the litigation in Streeter v. Streeter is not to deprive the Plaintiff of her due process rights, but to enforce the law so that no person is above the law. There is a need for a trial in the Probate Court regarding the charge of fraud against the court under Rule 60 (b)(6) and (d) or to appeal the March 25, 2019 Memorandum of Decision and Order that dismissed with prejudice (hereinafter the 2019 Dismissal with Prejudice) the Plaintiff's Motion to Vacate and Divorce Decree and Motion to Correct the Divorce Decree (hereinafter the Motions to Vacate and Correct).

7.    It is alleged that the five Probate Court Judges listed below participated in a conspiracy to cover up fraud against the court and deprive the Plaintiff of her 14th Amendment rights:

    a)   The Honorable Judge Willian F. McSweeny, Jr, Associate Justice of the Middlesex Probate Court and Divorce Trial Judge (hereinafter the "Trial Judge")

    b)  the Honorable Judge Edward F. Donnelly, Jr, retired Chief Justice of the

          Cambridge Probate and Family court,

    c)  the Honorable Judge Jennifer Allen, Associate Justice of the Middlesex Probate

          Court,

    d)  the Honorable Judge Melanie Gargas, Associate Justice of the Middlesex Probate

          Court

    e)  and the Honorable Judge John Casey, Chief Justice of the Massachusetts Probate

          Court.

8.    While this complaint is due to the alleged violation of the Plaintiff's constitutional

      rights in <u>Streeter v. Streeter</u>, it may be necessary to refer to other cases referred to as

      the Streeter Matters during the trial.

    a)  The Equity Action Re: Mr. Streeter's Inheritance (MI14E00779QC)

    b)  The Equity Action Re: the MET Life Insurance Polity (MI14E0078QC)

    c)  The Guardianship Re: Lillian Conway Streeter (MI15P0439GD)

    d)  The Injunction Re: the financial affairs of Lillian C. Streeter (MI18E0103GC)

    e)  The Equity Action Re: the support of daughter after age 21 (MI19E0036GC)

9.    This case meets the criteria for a conspiracy and invidious discrimination under

      §1985 (3) as required for relief under §1983. This case seeks declarative rulings and

      injunctive relief when no other avenues for declaratory relief are available. This

      complaint does not seek monetary damages.

10.   Public Law 95-574 revised 5 U.S.C. §702 to allow actions against the United States

      or any of its agencies or officers including judges; previously judges were excluded.

11.    Under the Administrative Procedure Act, 5 U.S.C. §701 and §702, a person suffering

legal wrong because of an agency action or an officer acted or failed to act in an

official capacity or under color of legal authority shall not be dismissed or relief

therein denied on the ground that it is against the United States may seek declaratory

or injunctive relief, but not monetary relief. The sovereign immunity defense has

been withdrawn only with respect to actions seeking specific relief other than money

damages, such as an injunction, a declaratory judgment, or a writ of mandamus.

Bowen v. Massachusetts, 487 U.S. 879 (1988).

12.    The Act of October 21, 1976, 90 State 2721 amended 5 U.S.C. § 701-703 to allows

actions against the United States or any of its agencies or officers. This revision

allows for judicial immunity such that a judge is not named in a civil suit, while also

allowing relief for actions taken and not taken by state judges.

## **RELEVANT PROCEDURAL HISTORY**

### **BALANCE BETWEEN RULE 8(B) AND SUFFICIENT FACTS FOR RELIEF**

13.    There is a balancing act between the need for a clear and concise complaint under Federal

Rule 8(b) and sufficient facts in a complaint to state a claim to relief that is plausible on

its face for it to avoid dismissal for failing to state a claim. Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007). This complaint has tried to strike that balance.

14.    There is extensive additional evidence to support the claimed relief. If there is an attempt

to have this complaint dismissed or for summary judgment for inadequate evidence to

support the claimed relief, it is requested that the Plaintiff be allowed to submit a reply to

provide additional evidence.

**2006**

15.      Frank S. Streeter, II and Chris C. Streeter were married on June 13, 1992. They have two children, Nathaniel Thayer Streeter (hereinafter "Nathaniel), born December 18, 1994, and Lillian Conway Streeter (hereinafter "Lilly"), born March 11, 1997. Mr. Streeter is self-employed; the Trial Judge found that he could work to support himself. Dr. Streeter is a physician. Lilly has a disability such that she will not be able to work to support herself. For this reason, it is imperative to prevent Mr. Streeter from dissipating trust assets that the Trial Judge found would benefit the parties children, not Mr. Streeter. Lilly's parents were appointed as co-guardians.

16.      The Streeter v. Streeter Divorce Trial was held over eight days from November 8, 2004 to March 25, 2005. The Trial Judge was  Judge William F. McSweeny, II.

17.      Judge McSweeny was transferred from the Middlesex County to the Norfolk County court prior to the end of the Streeter v. Streeter trial.

18.      On March 3, 2024, the last day of the trial, Judge McSweeney stated in the Trial Transcripts that he did not take notes and would not remember the facts of the case for more than 30 days.

19.      On December 15, 2005, 10 months after the trial concluded, during a motion hearing in the Concord Probate and Family Court, the Court, Judge McSweeney stated that he had been away from the Streeter v. Streeter trial records, had written the judgment, and was working on the findings.

20.      The Divorce Nisi was signed by Judge McSweeny on February 6, 2006, 16 months after the start of  trial.

21.      There is no evidence that the Judge McSweeny had written the judgment in December 2005, or that he was working on writing the findings. The Divorce Nisi Judgment was

copied verbatim from Mr. Streeter's proposed Findings of Fact, Conclusion of Law and Discussion (hereinafter, Mr. Streeter's findings) and proposed judgment with the following exceptions. There are 460 Findings of Fact, 453 were copied verbatim and 7 had deletions. All 16 Conclusions of Law were copied verbatim. There are 13 Points of Discussion, 12 were copied verbatim, one had a deletion. There are 24 findings in the judgment, 21 were copied verbatim. The generic changes to the judgment could have been made by a person with no knowledge of the case. The changes to the judgment could be used to claim the judgment was the product of the Trial Judge's own work.

22.     There is no evidence to support Judge McSweeney's ability to recall a single fact about the case, as he was completely dependent on Mr. Streeter's proposed findings. If it was not in Mr. Streeter's proposed findings it was not in the Divorce Nisi or Divorce Judgment. The trial transcripts show that the Judge McSweeney did not recognize that the findings that he chose to copy were not consistent with his own trial rulings, his trial own comments, the trial testimony, or the trial exhibits.

23.     In the Conclusions of Law, the Court (McSweeny, J.) referred to the three cases: S.L. v. R.L., 55 Mass. App. Ct. 880, Davidson v. Davidson, 19 Mass. App. Ct. 364 and Lauricella v. Lauricella 565 NE 2d 436 - Mass: Supreme Judicial Court 1991.

24.     All three cases states if a spouse has a present, enforceable and equitable right to the trust property the Probate Court could include the trust interests in the marital estate for the purpose of division. While Divorce Nisi Finding states that all trusts must be individually considered, this is not what was done.

25.     By coping Mr. Streeter's findings, Judge McSweeny categorized 13 trusts that benefit Mr. Streeter as having no enforceable rights of distribution, when 7 of the trusts had

6

enforceable rights of distribution as documented by the trust instruments that were in evidence and by Divorce Trial Exhibit 103 that summarized Mr. Streeter's vested interests in multiple trusts valued at $5,267,183 in 2004, all of which were excluded from the marital estate for the purposes of division by Mr. Streeter in his proposed and clearly erroneous findings.

26.    In the Divorce Judgment, the marital home was valued at $1,384,477. The Plaintiff was given 57% ($789,152) compared to Mr. Streeter's 43% ($595,325) or an additional $193,826 to offset his anticipated inheritance ($5,267,183 from his trusts and $2,500,000 from his mother or $7,767,183). The Plaintiff's increased equity in the marital home representing two cents for every dollar Mr. Streeter would inherit.

## EXHIBIT 87

27.    Mr. Streeter and his attorneys claimed that Exhibit 87 was made by Ropes and Gray, LLP, the firm that manages the Streeter Trusts. It was claimed that the listed $880,000 in Exhibit 87 reflected all of Mr. Streeter's trust distribution of principal called "loans" from the 1973, 1976 and 1987 Streeter Trusts listed from 1992 through 2003. Exhibit 87 is not consistent with the available documents from Ropes and Gray. Mr. David Angle, Esq, a Ropes and Gray attorney, stated in a court hearing with Judge Donnelly that there is no evidence that Ropes and Gray made Exhibit 87. There is no evidence that the loan repayments were required, as the person who decided to repay the loans was Mr. Streeter.

28.    Mr. Streeter is a current beneficiary of the 1973, 1976, and 1987 Streeter Trusts under Article FIRST. His children are current beneficiaries of the 1973, 1976 and 1987 Streeter Trusts under Article THIRD. Mr. Streeter and his children have equal rights to receive

income and principal distributions at the discretion of the Ropes and Gray, LLP trustees that manage the trusts, with the exception that Mr. Streeter has a right to receive income from the 1973 Streeter Trust.

29. Divorce Nisi Findings 202, 215, 221, and 227 state the 1973, 1976 and 1987 Streeter trusts were to benefit the parties' children, Nathaniel and Lilly, not Mr. Streeter.

30. Mr. Streeter's father, Henry Streeter died in 2000 during the marriage; his estate accounting showed Mr. Streeter inherited around $1,435,844, while he was credited with only $314,000 in the Divorce Judgment plus real estate that was devalued.

31. Divorce Nisi Findings 195, 196, 208, 209, 220, 221, refer to Exhibit 87. Exhibit 87 was was used: (a) to remove $880,000 from the marital estate for the purposes of division; (b) to remove the 1973, 1976, 1987 Trust from consideration in the division of the marital estate, and (c) to remove the steady stream of distributions from these trusts from the calculation of child support.

32. There is no evidence to support the claimed repayment of trust loans from Mr. Streeter's inheritance was required as the Trial Judge struck Mr. Streeter's testimony on this issue, but he seems to have forgotten his ruling when he copied Mr. Streeter's proposed findings that repayment of the $880,000 from his inheritance was required. Except for the claims made by Mr. Streeter and his attorneys regarding Exhibit 87, there is no evidence that any trust loans were repaid.

33. Mr. Streeter has consistently maintained that he has received no principal distributions from the 1973, 1976 and 1987 Streeter trusts since 2003; a claim inconsistent with the steady stream of deposits from Ropes and Gray into his bank account. Although Mr.

Streeter's Bank Statements were subpoenaed during the Arbitration, Judge Donnelly did not allow them to be placed in evidence.

34. The subpoena of the 1973, 1976 and 1987 Streeter Trust records would provide the definitive evidence regarding the amount of the trust principal/loans received by Mr. Streeter, if those loans had been repaid from Mr. Streeter's inheritance, if Mr. Streeter received any principal distributions after 2003 and if Ropes and Gray made Exhibit 87.

35. Judge Donnelly declined or ignored multiple requests to subpoena the 1973, 1976 and 1987 Streeter Trust records in every case listed in this motion from 2014 through 2019, and then claimed the Plaintiff had not provided sufficient 'evidence' to support her claimed relief. Judge Allen and Judge Gargas also declined to allow the Streeter Trust records to be subpoenaed but did not issue any rulings that could be appealed.

## PURCHASE AND SALE OF CAMBRIDGE PROPERTIES

36. Mr. Streeter and his attorneys claimed that all of Mr. Streeter's trust loans and repayments from 1992 to 2003 were listed in Exhibit 87. In 1994, Mr. Streeter and the Plaintiff sold the 52 Fenno Street, Cambridge, Massachusetts property and purchased the 25 Lakeview Avenue, Cambridge, Massachusetts property. In 1994, Exhibit 87 does not show any loan for $250,000 or any loan repayments. Exhibit 87 cannot be reconciled with Divorce Nisi Findings 64 (Frank Streeter's Proposed Finding 65).

The Husband put a $250,000 down payment on the [25 Lakeview Ave, Cambridge Massachusetts] property. The Husband was allowed to borrow funds from one of the Streeter Family Trusts...until Fenno Street [property] sold. Once Fenno Street was sold, the funds borrowed for the Lakeview down payment were repaid to the trust from the sale of Fenno.

37. Divorce Nisi Finding 64 cannot be reconciled with the evidence available to Mr. Streeter at the time of the divorce. The Purchase and Sale Agreement for the Fenno Street

9

property show that it was sold for $300,000 with $180,000 of equity after the mortgage was paid, not enough to repay a $250,000 loan. The Purchase and Sale for the Lakeview property show that it was bought after the Fenno Street property was sold not before as claimed by Mr. Streeter with a down payment of $200,000 not $250,000 (Purchase price $625,000, mortgage $425,000). The $200,000 down payment consisted of a $50,000 from Mr. Streeter, $20,000 from the Plaintiff and $150,000 from the Fenno Streeter equity.

38. The Divorce Judgment gives 57% of the marital home to the Plaintiff to offset Mr. Streeter's inheritance. The presumed 50%:50% split prior to the increase to offset Mr. Streeter's inheritance does not reflect the Plaintiff's greater contribution to the purchase of the marital home with mortgage payments of over $340,000 at the time of the trial as documented in Trial Exhibit 100 or her increased care for the parties children.

**2008**

39. In June 2008, Judge Donnelly allowed the Plaintiff to sell the martial home at 25 Lakeview Avenue, Cambridge Massachusetts to move to 47 Farmcrest Avenue, Lexington Massachusetts (hereinafter the "Farmcrest Property") due to the daughter's educational needs. Mr. Streeter's 43% of the marital home was transformed into a mortgage on the Farmcrest Property.

40. Mr. Streeter's attempt to get equity from the sale of the Lakeview property delayed the sale from the Spring of 2008 to one week before the 2008 Financial Crisis with an estimated loss of $300,000 in equity from the sale, as documented in the 2018 Equity action that was denied without prejudice on March 25, 2019

**2009**

41.     On April 23, 2009, the parties entered into a stipulation appointing an Arbitrator to address stated issues including the Modification for Child Support, the value of Mr. Streeter's equity in the Farmcrest Property, a Contempt for not paying child support, uninsured medical costs and activity fees. The items to be addressed by the Arbitrator could only be expanded if both parties agreed in writing. The Arbitrator was not authorized to address the charge of fraud against the court. The Final Arbitration Award was filed with the Judge Donnelly on June 15, 2015 before the Motions to Vacate and Correct the Divorce Judgment due to fraud against the court. The Final Arbitration Award was not accepted by Judge Donnelly until March 25, 2019, four years later.

**2012-2014**

42.     The Plaintiff had been represented by counsel during the trial. It was not until she received the trial documents from <u>Streeter v. Streeter</u> in the late summer of 2012, that she was able to compare Mr. Streeter's proposed findings with the Divorce Nisi and Divorce Judgment. The degree of copying was unexpected and led her to the conclusion that the Trial Judge copied Mr. Streeter's proposed findings and judgment because he did not have the capacity to issue a produce of his own work due to his lack of notes, his separation from the trial documents while he was at the Norfolk Court, and the time between the end of the trial and when he issued a judgment.

43.     By 2013, the Plaintiff had determined that there was no evidence to support conclusion that the Trial Judge could remember anything about the case, as he had copied verbatims 460 items from Mr. Streeter's proposed findings and the Divorce Judgment with 7 generic changes that could have been made by a person with no knowledge of the case. Thus, all clearly erroneous statements are attributable to Mr. Streeter and his divorce

attorneys. There is no evidence to supports the conclusion the Trial Judge could function as the finder of fact, or produce a judgment that was the product of his own work.

44.   In 2013, the Plaintiff attempted to file motion to correct the Divorce Judgment in the Cambridge Probate Court; she was told by the clerks that the motion would not be accepted due to the statute of limitations of one year for a final judgment.

45.   In May 2014, because the Plaintiff was prevented from filing a motion to correct the Divorce Judgment in the Cambridge Probate and Family she filed in the Superior Court (MICV2014-04494).

46.   In 2014, the Plaintiff filed two equity actions in the Cambridge Probate and Family Court regarding a correction of Mr. Streeter's inheritance (Docket No.: MI 14 E0078QC) and the MET Life insurance Policy (Docket No.: 14 E0079QC). None of the supporting documents provided to Judge Donnelly were docketed. None of the requested discovery was allowed.

47.   On July 26, 2014, Ms. Brenda Diana, Esq., filed a Motion to dismiss MI14E0079GC with prejudice. On March 25, 2019 after the Motions to Vacate and Correct the Divorce Judgment due to fraud against the court had been dismissed with prejudice, Judge Donnelly ALLOWED Ms. Diana's motion. This ruling was dependent on the finality of the Divorce Judgment, the five year delay reflects the delay in addressing the charge of fraud against the court.

48.   On August 4, 2014 Judge Donnelly denied the Plaintiff's motions to subpoena the Streeter trusts in MI14E0079 and MI14E0078 stating "denied without prejudice at this time. This Court has serious doubts as to whether the allegations, if proven constitute fraud on the court as the phrase is defined by case law".

49.   The August 2014 ruling shows that Judge Donnelly was aware of the charge of fraud against the court, but in his role as Chief Justice of the Cambridge Probate Court and the Trial Judges supervisor took no public action regarding the Judicial Code of Conduct Rule 2.15.

50.   On May 20, 2015, after 11 months of litigation, the Superior Court case was dismissed for lack of jurisdiction and sent back to the Probate Court. The Court (lnj, J.) noted in the dismissal:

> "{t]here is no time limitation that would bar a judge from setting aside a judgment for fraud upon the court." Sabin v. Sabin. 435 Mass. 369. 405 (2002), citing Mass R. Civ. P. 60 (b), MacDonald v. MacDonald 407 Mass. 196, 202 n. l 0 (1990). "A fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing parties claim or defense. " ld At 405-406. "A party seeking to demonstrate fraud on the court must prove the most egregious conduct involving a corruption of the judicial process itself. Examples are the bribery of judges, employment of counsel to influence the court, bribery of the jury and the involvement of an attorney (an officer of the court) in the perpetration of the fraud." Id at 406.

## 2015

51.   On June 10, 2015, the Final Arbitration Award was filed with Judge Donnelly.

52.   On August 12, 2015, the Plaintiff, with the knowledge that the Superior Court had stated that there was no statute of limitations to prevent a filing in the Probate Court due to fraud against the court, insisted the Motion to Vacate the Divorce Decree and the Motion to Correct the Divorce Decree (hereinafter the Motions to Vacate and Correct") under Rule 60 (b)(3) and (d) be filed.

53.   In 2015, when the Motions to Vacate and Correct were presented to Judge Donnelly during a court hearing, he stated the filings were a problem because the Final Arbitration Award had been filed.  There was no legal problem related to the Final Arbitration Award

being filed. The problem was one of workload, because if fraud against the court was found in the Streeter v. Streeter Divorce Nisi and Judgment, corrects to the Final Arbitration Award would be needed.

54.    On September 25, 2015, the Plaintiff filed the Pleadings with Particularity as required by Rule 9 regarding the charge of fraud. The Pleadings with Particularity is a 198-page document that discusses how 105 findings are clearly erroneous with references to trial testimony or trial exhibits.

## 2016

55.    On October 14, 2016, the Plaintiff filed a motion asking for a hearing on the status of motions filed with the court including the Motions to Vacate and Correct the Divorce Judgement and the Pleadings with Particularity, as these documents had been filed with the court but not docketed. In the hearing for this motion, Judge Donnelly went into his office of Court Room 2 of the Cambridge Probate Court and brought out the documents that had not been docketed, confirmed that he had both the documents and jurisdiction. The failure to docket motions that Judge Donnelly had been provided with was a violation of Rule 5 (e).

## 2018

56.    During a court hearing in the fall of 2018, three years after the Motion to Vacate and Correct had been filed, Judge Donnelly stated that he had not decided if the Plaintiff had stated a claim on which relief could be granted. The requested relief was the correction of the erroneous findings in the Divorce Nisi and then a correction of the Divorce Judgment.

57.    On October 2, 2018, the Plaintiff filed a petition for relief with the Supreme Judicial Court of Massachusetts - Single Justice (SJ-2018-0444) under M.G.L. c § 211.3 due to

the combination of Judge Donnelly's upcoming retirement and the discovery that over

200 motions filed with the court had not been docketed, rulings had not been docketed

such that they could not be appealed and numerous motions that had been awaiting

rulings for years in the <u>Streeter v. Streeter</u>.

58.   Judge Donnelly's pattern of not docketing documents filed with the court or docketing

rulings such that they could be appealed is also present in MI14E0078GC,

MI14E0079GC, and MI180103GC.

59.   The Assistant Attorney General, representing Judge Donnelly, requested enlarged time to

serve a response on November 20. 2018, December 14, 2018 and February 15, 2019 such

that the outstanding rulings were not due until April 5, 2019, days before Judge

Donnelly's retirement as Chief Justice of the Probate Court. These delays allowed Judge

Donnelly to avoid addressing any corrections or appeals of his rulings which resulted in

judges with no knowledge of the case being confronted with the need to issue rulings

with regards to corrections or appeals. Judge Donnelly knew or should have known that

by delaying his rulings for years, he made it difficult for the Plaintiff to correct his rulings

as allowed by due process.

**2019**

60.   On March 25, 2019, Judge Donnelly filed 11 writs, days before his retirement as the

Chief of the Cambridge Probate Court. One of the rulings had been pending for over a

decade, many had been pending for years. As all of the rulings depended on the Finality

of the Divorce Judgment, such that Judge Donnelly could not address any of the

outstanding rulings until he addressed the August 12, 2015 Motions to Vacate and

Correct the Divorce Judgment due to fraud against the court that had been pending for

four years. Given the delay of 5 months between when the October 2018 M. G. L. c. §
211.3 was filed and the March 25, 2019 rulings, there is concern that without the M. G.
L. c. § 211.3 Judge Donnelly would not have addressed the issue of fraud against the
court prior to his retirement.

61.   The rulings signed on March 25, 2019 and docketed on March 27, 2019.

62.   The first ruling to be docketed was the Memorandum of Decision and Order that
dismissed with prejudice the 2015 Motions to Vacate and Correct the Divorce Judgment
of February 6, 2006 under Rule 60 (b)(3) and (d) (hereinafter the "2019 Dismissal with
Prejudice) in which Judge Donnelly cited the following reasons for dismissal. The
responses are from the April 9, 2019 Motion under Rule 60 that has still not been
disposed of by the Court.

    a)   The Pleadings with Particularity were insufficient to support the Plaintiff's claims
for relief.

        i.   Response: The Pleadings with Particularity is very detailed and highly
referenced document that discusses how 105 Findings are clearly
erroneous and should be corrected. There is no comment in the 2019
Dismissal with Prejudice that would support the conclusion that Judge
Donnelly read the Pleadings with Particularity before deciding they were
insufficient.

        ii.   The identification of the Streeter Trust records met the standard
established by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007),
"plausibility" standard, requiring in this case "enough fact[s] to raise a

16

reasonable expectation that discovery will reveal evidence of illegal agreement."

b) A copy of Mr. Streeter's proposed findings had not been provided.

    i. Response: Judge Donnelly had been provided with Mr. Streeter's proposed findings twice: once in 2014 (Docket No.: 14 E0079QC) that were not docketed, and again November 13, 2018 as an appendix to the 2018 Equity Action that Judge Donnelly dismissed on March 25, 2019.

    ii. Response: 'The Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff.' Harihar v. U.S. Bank Nat'l Ass'n, No. 15-CV-11880-ADB (2017). The criteria for dismissal is not the presentation of evidence but the identification of plausible facts.

c) Judge Donnelly claimed that it was his discretion to decide if the motion to correct was filed in a timely manner.

    i. Response: This finding is inconsistent with the prior ruling of the Superior Court (see Finding 47) and Civ R. P. 60 (d), both of which state there is no statute of limitations for cases based on fraud against the court.

    ii. Response: The Plaintiff received the Streeter v. Streeter trial documents in the summer of 2012. By 2013 she had tried to file a motion to correct the Divorce Judgment in the Probate Court. By 2014, she had filed two equity actions in the probate court that charged fraud against the court. The delay in her taking action to address the fraud against the court was less than one

year, not from 2003 to 2015 as claimed by Judge Donnelly. The time "for the purpose of determining when a cause of action accrues, and thus when the statute of limitations starts to run...prescribes as crucial the date when a plaintiff discovers, or...should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990); see also Szymanski v. Bos. Mut. Life Ins., 56 Mass. App. Ct. 367, 370 (2002). If this was a case with a statue of limitations the time of reasonable discovery would have been late 2012 to early 2013. However there is no statute of limitations for fraud against the court under Rule 60 (d).

iii. A claim is not subject to dismissal on statute of limitations grounds unless "it is undisputed from the face of the complaint that the action was commenced beyond the applicable deadline." Commonwealth v. Tradition (N. America) Inc., 91 Mass. App. Ct. 63, 70 (2017); see also Donovan v. Phillip Morris USA, Inc., 455 Mass. 215, 228 (2000). Judge Donnelly claimed the motions were time barred under Civ. R. P. 60 (b)(3) which has a one-year statute of limitations. However, the Plaintiff did not claim fraud only under Civ. R. P. 60 (b)(3), but fraud under Civ. R. P. 60 (b)(6) and (d). The operative word with regards to (b)(3) is a final judgment, as a judgment based on fraud against the court will never be final. While there is discussion as to whether there is a one-year statute of limitations with regards to 60 (b)(3) and (6), there is no statute of limitations with regards to 60 (d).

    d) Conclusion: "[a]s discussed above.[Wife] has failed to present clear and

        convincing evidence that a fraud upon this Court has occurred or that

        extraordinary circumstances exists such that the Divorce Judgment should be

        vacated and corrected.

           i. Response: This case met heightened the pleading requirement for federal

             civil cases by requiring for plaintiffs to include enough facts in their

             complaint to make it plausible, not merely possible or conceivable, that

             they will be able to prove facts to support their claims. <u>Bell Atlantic Corp.</u>

             <u>v. Twombly</u>, 550 U.S. 544 (2007)

          ii. Judge Donnelly was required to "accepting as true all well-pleaded factual

             averments and indulging all reasonable inferences in the plaintiff's favor."

             <u>Leatherman v. Tarrant County N. I. C. Unit,</u> 507 U.S. 163, 164 (1993);

             <u>Correa-Martinez v. Arrillaga-Belendez,</u> 903 F.2d 49, 52 (1st Cir. 1990).

             This would require him to consider the Streeter Trust records and Mr.

             Streeter's bank statements as described where or not they had been

             subpoenaed or allowed by him into evidence.

63.     Judge Donnelly was aware but ignored the in-court statement of Ropes and Gray

       attorney, David Angle, who stated that there was no evidence that Ropes and Gray

       made Divorce Exhibit 87.

64.     The Court Docket shows multiple attempts by the Plaintiff to obtain the Streeter Trust

       records that are not privileged. The Plaintiff's right to obtain the Streeter Trust

       records under the Trust Instruments, the Uniform Trust code and Rule 25 Discovery.

       Judge Donnelly, Judge Allen and Judge Gargas have all either not addressed the filed

motions to subpoena these documents or denied the requested subpoenas that would

provide conclusive proof of the alleged fraud with regards to Exhibit 87. These

actions are consistent with a conspiracy to cover up fraud against the court.

### APRIL 2019

65. On April 9, 2019, with in the required time period, the Plaintiff filed a Motion under Rule

60 regarding the March 25, 2019 Memorandum of Decision and Order that dismissed

with prejudice the Motions to Vacate and Correct the Divorce Decree.

66. On April 12, 2019, the Plaintiff filed a Motion to Correct the April 9, 2019 Motion under

Rule 60 to add Rule 52 and 59.

67. From April 20 to 28, 2019, the Plaintiff was out of town for a conference. The evening

she returned, she received the Defendants' April 20, 2019 Motion to Strike her April 9,

2019 Motion under Rule 60 claiming that the filings should have been filed on April 8,

2019. This Motion to Strike did not consider the 3 days for mailing, such that the motion

was not late.

68. The next day, on April 29, 2019 in order to preserve her right to appeal, the Plaintiff filed

following four Notices of Appeal. , In retrospect these filing were premature as the April

9, 2019 Motion had not been disposed of by the court.

69. Accordingly  Plaintiff's Notice of Appeal in Re: Court Memorandum and Order dated

March 25, 2019 Dismissing with Prejudice the Motion to Vacate the Divorce Decree and

the Motion to Correct the Findings and Orders of the Divorce Decree in Streeter vs.

Streeter" (MI01D0619DV1, Docket Entry No. 431) will need to be refiled if the April 9,

2019 Motion is DENIED; if ALLOWED the case would go to trial in the Probate Court.

70. The Notices of Appeal were accepted as timely by the Cambridge Probate and Family Clerk, after his review of when the writs had been docketed. Mr. Streeter filed a motion to strike the Notices of Appeal claiming that they were also filed one day late.

71. Judge Allen ascended to the bench one month before Judge Donnelly retired as the Chief Judge of the Cambridge Probate and Family Court. She was assigned the Streeter Matters. It is argued that she had three choices: 1) to correct or overturn the rulings of the Ex-Chief Justice of the Probate Court, 2) to issue rulings that were not supported by the evidence or (3) to do nothing. When she was transferred to another jurisdiction she left around 24 outstanding motions, including 6 motions filed with regards to the March 25, 2019 rulings that prevented due process from proceeding.

72. On October 2019, Judge Allen DENIED the April 12, 2019 Motion to amend the April 9, 2019 Motion to add Rule 52 and 59, never disposed of the April 9, 2019 Motion.

73. Because the Court had failed to dispose of the April 9, 2019 Motion under Rule 60, Appellate Rule 4 states the time to file an appeal had not yet started to toll so that there is an automatic stay on the Divorce Judgment under Rule 62 (a): Except as stated herein, no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the time for appeal from the judgment has expired...

74. On November 11, 2019 under SJ 2018-0444, the Supreme Judicial Court Single-Justice issued a ruling declining to intercede stating, "These matters should be addressed in the first instance in the Probate Court, and thereafter, if necessary, on appeal in the normal course."

**2020**

75. On May 5, 2020, the Court (Allen, J.) issued the following ruling regarding the sale of the Farmcrest Property on Chris Streeter's Motion stamped December 6, 2019:

> The Court declines to enter orders under Mr. Streeter's Complaint for Contempt or pursuant to the instart Motion to Dismiss until the appeal has been determined.

76. In 2020, the Plaintiff filed an amendment to SJ 2018-0444 stating that 20 documents remained undocketed including the Pleadings with Particularity.

### 2021

77. The Pleadings with Particularity were finally docketed in 2021, after Judge Donnelly retired, six years after they were filed in 2015 and after requests this document be docketed in 2016, 2018, and 2020.

78. In April 2021 during a hearing Judge Gargas, Mr. Streeter renewed his attempt to get his equity from the Farmcrest Property by asking Judge Gargas who had not been assigned to the Streeter v. Streeter Divorce, to Strike the Notices of Appeals as being untimely. The Plaintiff objected as Judge Gargas did not have jurisdiction over the Streeter v. Streeter divorce. Judge Gargas said that she was not responsible for motions assigned to Judge Allen.

79. On May 4, 2021, the Plaintiff filed with second petition for relief (SJ 2021-0193) due to motions that had not been disposed of by Judge Allen such that due process could proceed as Judge Gargas had states that she was not responsible for motions previously assigned to Judge Allen, who had been assigned to another jurisdiction prior to addressing the motions assigned to her.

80. On September 2, 2021, the Assistant Attorney General despite no actions to address the outstanding motions that were preventing due process (including the April 9, 2019 Motion) claimed the usual means were available, such that it was not necessary for the

22

Supreme Judicial Court to use its powers under M. G. L. c. 211, § 3 citing "Where a petitioner can raise his claims in the normal course of trial or appeal relief will be denied (quoting Foley v. Lowell Div of the Cis court Dep't. 398 Mass. 800, 802 (1986).

81. On September 7, 2021, the Supreme Judicial Court Single-Justice dismissed SJ 2021-0193 without a hearing. The Plaintiff petitioned for and was granted a hearing with the Full Supreme Judicial Court (SJC 13186).

**2022**

82. On March 8, 2022, the Full Supreme Court gave a similar reason for the denial "Relief under G. L. c. 211, § 3, is extraordinary and will be exercised only in the most exceptional circumstances." Perrier v. Commonwealth, 489 Mass. 28, 30 (2022), quoting Matthews v. Appeals Court, 444 Mass. 1007, 1008 (2005).

83. On June 16, 2022,  Plaintiff filed a petition for certiorari with the Supreme Court of the United States as the usual means were not available such that her right to appeal was being denied. The certiorari was denied on October 3, 2022.

84. On March 10, 2022, two days after the Full Supreme Judicial Court ruling in which Judge John Casey was listed as the Defendant, Judge Gargas issued four rulings on motions that had been docketed 2019, 4 years earlier and 11 months after the April 2021 hearing in which she had said she was not responsible for motions previously assigned to Judge Allen. It appears that Judge Casey as requested in the petitions for relief had assigned a judge to address the Streeter Matters.

85. The Plaintiff was not informed of the assignment as was not provided with copies of Judge Gargas' March 10, 2023 rulings in violation of Rule 5 and 77 (d).

23

86. The Plaintiff's November 16, 2022 affidavit states on November 11, 2022, she received the March 10, 2022 Memorandum of Decision and Order (hereinafter the "2022 Dismissal with Prejudice") for the first time as an attachment to Mr. Streeter's Motion for a Judgment of Contempt Re: the sale of the Farmcrest Property.  It is argued that the Plaintiff cannot willfully disobey a ruling of which she had no knowledge.

87. As 8 months had passed from March 10, 2022 to November 11, 2022, the Plaintiff could no longer file corrections or an appeal. She did file a motion to set aside the 2022 Dismissal with Prejudice under due to lack of service and a motion to correct errors in the 2022 Dismissal with Prejudice.

88. The March 10, 2022 Memorandum of Decision and Order dismissed with prejudice the Notice of Appeal Re: the 2019 Dismissal with Prejudice of the Motions to Vacate and Correct the Divorce Judgment. As the April 9, 2019 Motion has not been disposed of by the Court, despite numerous requests, the time to file the appeal regarding the 2019 Dismissal with Prejudice has not yet started to toll. Under Appellate Rule 4 the Notice of Appeal filed on April 29, 2019 was premature and would need to be refiled after the April 9, 2019 motion was disposed of by the Court  so that the time to toll to file the appeal for the 2019 Dismissal with Prejudice of the Motions to Vacate and Correct the Divorce Judgment could start. While there was an automatic stay under Rule 62 (a) no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the time for appeal from the judgment has expired, Judge Gargas did not revise the ruling of contempt.

89. If the April 9, 2019 Motion were ALLOWED, there would be a trial in the Lower Court to determine if there was fraud against the court in the <u>Streeter v. Streeter</u> Divorce; if so there should be corrections to the Divorce Nisi and Judgment such that the Defendants listed on the Motions to Vacate and Correct would receive not benefit from the fraud against the court. It is argued that a correction due to fraud against the court would result in the Defendant having no equity in the Farmcrest Property.

90. If the April 9, 2019 Motion were DENIED, the Plaintiff would have 30 days to file the Notice of Appeal regarding the 2019 Dismissal with Prejudice during which a stay under Rule 62 (a) would be in effect and the ability to file for a new stay pending the appeal under Rule 62(d).

91. The Plaintiff filed several motions and a memorandum that discussed how the April 9, 2019 Motion Under Rule 60 Re: the 2019 Dismissal with Prejudice needed to be disposed of and the March 10, 2000 Memorandum of Decision and Order corrected.

**2023**

92. On November 24, 2022 during a hearing and again on January 9, 2023 in writing, Judge Gargas found the Plaintiff in contempt for not cooperating with the sale of the Farmcrest Property, appointed a Special Master to oversee the sale of the Property, who engaged a real estate agent to sell the property.

93. On January 15, 2023, the Plaintiff filed a Notice of Appeal Re: the January 6, 2023 Contempt and forced sale of the Property

94. On January 15, 2022, the Plaintiff filed a motion to stay the sale of the Property pending the sale of the Farmcrest Property in the Probate Court.

95. On January 27, 2022, due to concerns that Judge Gargas would not issue an order to stay the sale of the Farmcrest Property, the Plaintiff filed a motion for a stay of the sale of the Property in the Appellate Court under Rule 62 (e).

96. On March 20, 2023, the Plaintiff received a text from the relator stating that there would be no delays or stays and the house would go on the market on March 29, 2023.

97. Judge Gargas did not address any of the issues raised in the motions filed by the Plaintiff or the motion for a stay. The Probate Court pattern of not issuing rulings in a timely manner is a form of preventing due process, as it prevents having the actions of the Probate Court reviewed by an Upper Court.

## BIAS IN ADDRESSING COMPLAINTS FOR CONTEMPT

98. On October 14, 2016, the Plaintiff filed a contempt for Mr. Streeter's non-payment of the educational costs and penalties in the Final Arbitration Award. Mr. Streeter claimed that he could not be held in contempt because Judge Donnelly had not accepted the order.

99. Due to Mr. Streeter's habit of not paying for ordered costs, the Arbitrator issued added a $100 penalty for every 15-days an educational payment was late. Mr. Streeter asked both the Arbitrator and Judge Donnelly to remove the $100 penalty for every 15-days an educational payment was late from the Final Arbitration Award. Both the Arbitrator and Judge Donnelly denied the request, but neither enforced the penalty, consistent with the national trend of child support payments not being enforced.

100. Despite being aware of the charge of non-payment of educational costs, Judge Donnelly did not accept the Final Arbitration Award until March 25, 2019. He never

addressed the 2016 Contempt for non-payment of educational costs and penalties

(hereinafter, the Educational Contempt").

101.   With no action taken on the 2016 Educational Contempt by Judge Donnelly, in

December 2019, the Plaintiff refiled the Educational Contempt. No action was taken

by Judge Allen. The Educational Contempt was assigned to Judge Gargas in 2020.

She took no action stating at the April 2021 hearing that she was not sure the

complaint was active. In 2023, the Plaintiff filed a motion to assign a Special Master

to the Educational Contempt in a manner similar to the Special Master that she has

assigned for the sale of the Farmcrest Property at Mr. Streeter's request. Judge Gargas

wrote on the motion that this issue was not before the court. Although provided with

another motion showing the complaint was active, she still did not assign a Special

Master to the Educational Contempt.

102.   Judge Gargas' speedy disposition of Mr. Streeter's Motion for a Judgment on his July

17, 2019 Complaint for Contempt was taken despite the following: (1) automatic stay

under Rule 62 (a) of the 2019 Dismissal with Prejudice that could reduce Mr.

Streeter's equity in the Farmcrest Property to zero, (2) the failure to dispose of the

April 9, 2019 Motion that would if ALLOWED result in a trial in the Probate Court

regarding the charge of fraud against the court, or if DENIED an Appeal for which

the Plaintiff could request a stay on the sale of the Farmcrest Property under Rule 62

(b), (3) the need to determine if the correction of the Divorce Judgment would

decrease Mr. Streeter's equity in the Farmcrest Property (3) the need to determine if

the money Mr. Streeter would owe due to the Educational Contempt is greater that his

equity in the Farmcrest Property, (5) and lastly the Plaintiff's inability to willfully

disregard an order of which she had no knowledge due to the failure of the Probate

Court to provide the Plaintiff with a copy of the March 10, 2022 rulings or the lack of

any evidence that Mr. Streeter requested her cooperation with the sale of the

Farmcrest Property after March 10, 2022.

103.   The estimated costs of the Educational Contempt as of March 15, 2023 is $830,000

without interest from when the Complaint was first filed in 2016. Penalties increase

by $4,100 every two weeks.

104.   The real estate agent, appointed by the Special Master, valued of the Farmcrest

Property at $1.7 to $2 million. The sale of the house, after the payment of the

mortgage and 5% real estate fee would net between $1,594,000 (Gross $2,000,000) to

$1,309,000 (Gross $1,700,000).

105.   The Defendant's equity at 43% minus the $16,000 he was already paid by the

Plaintiff during the arbitration would be from $546,870 to $685,420.

106.   The difference between the amount the Defendant would owe to the Plaintiff based

on the estimated value of $830,000 minus his 43% equity ($546,870 to $685,420)

would be from $153,773 to $276,323. There is no reasonable selling price for the

house in which the Defendant's equity from the property would be more that the

estimated payments from the Educational Contempt.

107.   There is no identified source for Mr. Streeter to pay for any costs related to the

Educational Contempt except his claimed equity in the house, which could be

reduced to zero if the charge of fraud against the court is true.

108.   The forced sale of the Property will cause irreparable harm to the Plaintiff unless a

stay in either the Probate or Appellate Court is issued. The forced sale of the property

could result in a loss of equity of $300,000 with an additional $85,000 to $100,000 in real estate fees. The sale of the property would displace the Plaintiff and her disabled daughter who to live at the Farmcrest Property. As there are two legal actions, the Educational Contempt and the 2019 Dismissal with Prejudice that could result in Mr. Streeter having no equity in the Farmcrest Property, the failure to allow the requested stays are a form of bias and deprive the Plaintiff of equal protection under the law, as the Probate Court addressed Mr. Streeter's request for a Judgment on Motion for Contempt and the assignment of a Special Master in 6 weeks, and the Plaintiff has been asking for the Educational Contempt to be addressed for 6 years.

## DEFERENCE AFFORDED TO TRIAL JUDGE.

109.   In the Appeal of the Divorce Judgment, Mr. Streeter argued the Trial Judge "carefully made 460 Findings". This statement is erroneous as the Trial Judge did not make any findings, he copied Mr. Streeter's findings verbatim. However, due to the deference given to the Trial Judge, all judges that have been involved in this case have relied on the findings of the Trial Judge that are unsurprisingly biased against the Plaintiff. Several examples are provided. The Plaintiff received an inheritance of $681,385 from her aunt, not $800,00 as claimed by Mr. Streeter. The Appellate Court upheld the value of $800,000 stating the Trial Judge had not been told that there were taxes on the estate. The Trial Judge had been told 6 time of the taxes, twice in the Plaintiff's testimony, in her proposed findings, in her proposed corrections AND the estate <u>tax</u> return that the Trial Judge referenced in Findings 172 and 176 that showed the estate taxes paid on the first page. If the Trial Judge had looked at the estate tax

return referenced in the findings that he was copying he would have known there were taxes.

110. Given the Trial Judge was completely dependence on Mr. Streeter's proposed findings the usual deference given to a Trial Judge should be questioned.

## BOWRING TWO-STEP PROCESS & LEGAL CUSTODY

111. Mr. Streeter's Appeal claimed "The Trial-Court properly satisfied the Bowring Two-Step Analysis" an analysis of the evidence support the conclusion that the Bowring Two-Step analysis was not meet as Mr. Streeter's proposed findings only contained information beneficial to him. M. G. L. c. 208 § 34 has 14 factors that the court must consider including the conduct of the parties during the marriage, and the present and future needs of the dependent children of the marriage. The Divorce Nisi under the conduct of the parties does not discuss the three 209A orders obtained by the Plaintiff, that Mr. Streeter threw hot coffee in the Plaintiff's face and burned her, or that Mr. Streeter threated to bring his gun to the marital home where the Plaintiff lived with the parties children and that the children witnessed these acts of violence.

112. In addition, the Divorce Nisi did not contain any reference to Mr. Streeter's attempts to blocked medical care for the son, such that the Plaintiff had to go to court on multiple occasions to get permission to treat the son, treatments that were found to be beneficial to the son. This pattern repeated in 2009 with regards to surgery for the daughter.

113. It is argued that Mr. Streeter's violent conduct around the children combined with his obstructive behavior regarding medical care should have resulted in the Plaintiff being given sole legal custody as requested. However, the Trial Judge in copying Mr.

Streeter's proposed judgment made the Plaintiff the custodial parent with Mr. Streeter being given shared legal rights. Judge Donnelly referenced the shared legal custody and claimed the parties could work together for the benefit of the children despite 15 years of litigation that supported the parties could not work together.

114.    The Guardianship ruling states:

>       "With respect to persons having equal priority, the court shall select the one it deems best suited to serve." G. L. c. 1908, § 5-305(d). "A guardianship proceeding is designed to effectuate the best interests of the incapacitated person." <u>Guardianship of B. V.G.</u>, 474 Mass. 315, 321 (2016).

115.    The law requires the best person (singular) to be appointed as a guardian. There is concern that Mr. Streeter was appointed as a co-guardian, not because it was in the best interests of the daughter, but because Mr. Streeter's position as a co-guardian supported the conspiracy to cover up the fraud against the court and as a form of gender bias.

116.    It is argued that the appointment of Mr. Streeter as co-guardian is based on his shared legal custody in the Divorce Judgment, such that the Divorce Judgment should be corrected to give the Plaintiff sole legal custody.

**JUDICIAL OVERSITE IS NOT FUNCTIONING IN PROBATE COURT**

117.    The Massachusetts Commission on Judicial Conduct (hereinafter the "Committee) is the state agency responsible for investigating complaints alleging that a state court judge has engaged in judicial misconduct. The Plaintiff has filed numerous complaints with the Committee. She has never been contacted by the Committee to evaluate her concerns. The details of the complaints are not provided as the Committee's deliberations are not made public to protect judges unless a finding is made that results in a public sanction.

118.   The Plaintiff filed a complaint with the Committee within required time period of one
       year after a reportable incident, the report was 24 pages with 18 attachments. She was
       told that it was not detailed enough. After numerous follow up letters and four years
       with no action on her complaint, the Plaintiff was told that action would only be
       investigated if she was charging "x", which she confirmed. The compliant was then
       reassigned a new case number with the year being 4 years after the initial complaint,
       at which point, the Plaintiff was told the complaint had been filed to late and could
       not be pursued.

119.   In another compliant, the Plaintiff was told the person being reported was "no longer
       with us". When the Plaintiff provided the Committee with an obituary stating that the
       parent with the same name had died and was survived by their child a judge, no
       response was received.

120.   Based on the Committee's annual reports during the time of the complaints, the rate
       of public censure was 0.1% for complaints filed. The low level of public sanction
       and the failure to address complaints filed in a timely manner results in no functional
       oversight of state judges and a Massachusetts Supreme Judicial Court that is unaware
       of potential misconduct.

### FAILURE TO ADDRESS MISCONDUCT UNDER RULE 2.12

121.   Around 2014, Judge Donnelly became Chief Justice of the Cambridge Probate Court
       and the Trial Judge's supervisor. As a supervisor, Judge Donnelly was required to
       comply with the Judicial Code of Conduct Rule 2.12 Supervisory Duties.

122.   There is no evidence Judge Donnelly took any actions with regarding to the Trial
       Judge's failure to produce a ruling that was the product of his own work due to his

complete dependence on Mr. Streeter's proposed findings which lead to the charge of fraud against the court.

123.    Consistent with knowledge of a problem with the Trial Judge's conduct, Judge Donnelly did not return Streeter v. Streeter to Judge McSweeny in 2014 but took over the case.

124.    Due to the failure to address the Trial Judges alleged misconduct. prior to 2015 when the Motions to Vacate and Correct were filed, Judge Donnelly had a personal reason for preventing the charges of fraud against the court being examined, his failure to comply with the Judicial Code of Conduct: Rule 2.12.

## ARGUMENT

## OVERVIWEW

125.    This Federal Civil Action does not request any monetary rulings, it requests (1) declaratory rulings on issues that the Probate Court has avoided addressing for years allegedly as part of the conspiracy to cover up fraud against the court and (2) injunctive rulings to prevent irreparable harm to the Plaintiff while due process proceeds in the form of corrections in the Probate Court or appeal.

126.    The requirements for relief under §1983 have been met by the requirements of conspiracy and invidious discrimination in the form of gender bias under §1985 (3).

## 5 USC § 702 RIGHT TO REVIEW

127.    Public Law 94-575 Revision of 5 USC § 702 states:

Right of review allowed for the following: An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an

indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

128. The revised 5 USC § 702 strikes a balance between the stated public policy that judicial immunity is essential for an independent administration of justice in which a judge must not be influenced by personal consequences and the need for a citizen to obtain relief from actions that while covered by judicial immunity cause harm to the individual or the judiciary. A conspiracy to cover up fraud against the court, once exposed will not engender public trust in the judiciary, nor will the violation of the Judicial Code of Conduct or the law by judges who due to judicial immunity can harm a litigant with no form of relief. This complaint under §1983 provided the relief required to maintain a public trust in the judiciary.

129. The 5 USC § 702 revision demonstrates that the legislature intended for a court action not seeking money against an officer or employee acted or failed to act under color of legal capacity could be brought in a court of the United States. By allowing the United States to be listed as a Defendant, this revision avoids having a judge listed as a Defendant in a civil suit while also allowing relief in the form of declaratory rulings or injunctive actions to address the alleged violation of the Plaintiff's constitutional rights.

## INSTITUTIONAL BETRAYAL

130. "Institutional Betrayal… is when an institution causes harm [by action or inaction] to an individual who trusts and depends upon that institution. Factors that contribute to institutional betrayal include strict membership requirements…; the existence of prestige or power or power differentials…; and rigid priorities, such as extreme efforts to protect the reputation of the organization. Cover-ups are perpetrated not

only by the original actors but at a culture of complicity... Sometimes individuals are complicit because staying quiet or hiding the truth benefits them and/or doesn't jeopardize their influence or power." Brene Brown, "Atlas of the Heart" p 194, (2020) The discussion goes on to say when institutional betrayal is part of the culture, money and power trump ethics, and accountability is dead.

131.   This case meets the criteria of institutional betrayal both by action [rulings made] and inaction [rulings avoided] that caused harm to a Plaintiff who was dependent on the judiciary for fair and equal treatment under the law. This case includes the following. There are strict membership requirements [first membership in the bar and then the bench]. There is a power differential between the judges assigned to the Streeter Matters and the Plaintiff, both when represented by council and as a pro se litigant. There is evidence of extreme efforts to protect the reputation of the organizations by ignoring the Judicial Code of Conduct, the Massachusetts Code of Professional Conduct, relevant evidence and the failure of the judiciary and the lawyer to report misconduct.

132.   There is evidence of individious discrimination, gender bias and confirmational bias, defined as ignoring or discounting evidence that does not support the rulings that are eventually made.

**FRAUD AGAINST THE COURT**

133.   The conspiracy starts with Mr. Streeter and his divorce attorneys submitting his proposed Findings of Fact, Conclusion of Law, and Discussion and Divorce Judgment. The Divorce Nisi cites Divorce Exhibit 87 (hereinafter Exhibit 87) thirteen times to support rulings that excluded $880,000 from the martial estate, claims that

35

Mr. had not and would not use any principal from the Streeter Trusts after 2003, and
had repaid $880,000 in trust loans from his inheritance from his father. The Pleadings
with Particularity documents 105 items that are clearly erroneous and which benefited
Mr. Streeter at the expense of the Plaintiff and prevented her from her defense: such
that there was a sentient plan that used three fraudulent documents, Exhibit 87, Mr.
Streeter's propose Findings of Fact, Conclusion of Law, and Discussion (hereinafter
Mr. Streeter's proposed findings) and his proposed Divorce Judgment created by his
attorneys that were successful in misleading the court as required for fraud against the
court for which the Defendants listed in the Motions to Vacate and Correct should
receive no benefit. This case meets the high standard required for fraud against the
court 'to interfere with the judicial system's ability impartially to adjudicate a matter
by improperly influencing the trier or unfairly hampering the presentation of the
opposing party's claim or defense.

> Fabrication of evidence by a party in which an attorney is implicated will
> constitute a fraud on the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co
> 322 US. 238, 64 S. Ct. 997 (1944)

> And in cases where courts have exercised the power, the relief granted has taken
> several forms: setting aside the judgment to permit a new trial, altering the terms
> of the judgment, or restraining the beneficiaries of the judgment from taking any
> benefit whatever from it. Hazel-Atlas Glass Co. v. Hartford-Empire Co 322
> US. 238, 64 S. Ct. 997 (1944).

> Proffering a forged document, providing misleading answers to
> interrogatories, and giving false deposition testimony were
> sufficient to make the finding of fraud against the court.
> Rockdale Mgmt. Co. v. Shawmut Bank, NA., 418 Mass. 596,
> 638 NE.2d 29.

> To limit punishment for such conduct to repayment of the costs
> of uncovering the fraud could actually encourage similar fraud.
> Munshani v. Signal Lake Venture Fund fl LP, 60 Mass.App.Ct.
> 714, 719, 721 (2004)

134. The original fraud against the court was missed by the Trial Judge who also committed fraud against the court when he did not perform his duties as a judge as he demonstrated no ability to independently recall a single fact about the case such that could not function as the finder of fact or issue a ruling that was the product of his own work. These actions meet the criteria of:

> "It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function — thus where the impartial functions of the court have been directly corrupted" Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985).

135. The Trial Judge copied clearly erroneous findings that were in conflict with trial testimony, trial exhibits, his own trial comments and rulings and the cases cited in the Conclusions of Law.

136. "[E]ven when the trial judge adopts the findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. Bessemer City, N.C., 470 U.S. 564, 572 (1985). The Pleadings with Particularity and the available Streeter Trust records support that Plaintiff's claim that the Trial Judge copied clearly erroneous findings that must be corrected.

137. The Plaintiff is not requesting a new trial. She is requesting the correction of the clearly erroneous findings and a Divorce Judgment that reflects the corrections.

## DECLARATORY RELIEF NOT AVAILABLE

138. It is alleged that after the divorce trial, the three judges assigned to the Streeter Matters sought to prevent the charge of fraud against the court from being addressed on the merits of the case. They knew or should have known that rulings should not have been issued that depended on the finality of a judgment that was alleged to be

based on fraud against the court such that it would never be final as allowed by Rule 60.

139.    The Probate Court failed to dispose of (1) the Motions to Vacate and Correct the Divorce Decree for 4 years, from 2015 to 2019, and (2) for another 4 years, from 2019 to the present, prevented a correction or appeal of the 2019 Dismissal with Prejudice of the April 9, 2019 Motion Under Rule 60.

140.    The Supreme Judicial Court, both Single Justice and Full, failed to provide relief with regards to the outstanding April 9, 2019 Motion, under the claim that the usual means to proceed were available, when the "usual means" an appeal was blocked.

141.    The petition for certiorari with the Supreme Court was denied.

142.    Judge Gargas has not disposed of the motions that would correct the alleged errors stemming from the March 10, 2022 rulings.

143.    There is no other forum to obtain a declarative ruling regarding the 2019 and 2022 Dismissals with Prejudice other than the complaint in the Federal District Court under §1983

## CRITERIA FOR CONSPIRACY

144.    This complaint is filed under 42 U.S.C.§ 1981-Equal rights under the law, §1983-Civil action for deprivation of rights, §1985- Conspiracy to interfere with civil rights, §1986(2)(3)- action for neglect to prevent, §1987 confers jurisdiction to the district court:

145.    In order to obtain relief under §1983, the following must be true.

> "must allege facts under §1985 (3) showing that (1) "conspire " (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or

caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." Griffin v. Breckenridge, 103, 403 U.S. 88 (1971).

    a) § 1985 provides a remedy for acts of civil conspiracy in which two or more individuals conspire for the purpose of depriving another of rights or privileges accorded to them by law." Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (citing 42 U.S.C. § 1985(3)).

146.    "[A] class is cognizable for purposes of § 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group. Burbank v. Town of Hubbardston, 146 F. Supp. 3d 402,405  (D. Mass. 2015).

147.    "conspiracy is a matter of inference" Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). "[f]or such a claim to be successful, the cover-up must result in an independent constitutional violation . . . ." Watson v. Perez, 168 F.Supp.3d 365, 373 (D. Mass. 2016) (citations omitted).

148.    To present an adequate conspiracy claim under § 1985(3) so that the Plaintiff can receive relief under §1983, the Plaintiff must allege the existence of  four elements: (1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." Bolduc v. Town of Webster, 629 F.Supp.2d 132, 150-51, Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (citing 42 U.S.C. § 1985(3))

149.    Invidious discrimination means discrimination of a class on the basis of sex, race, religion, or national origin, which is arbitrary, capricious, without reasonable foundation. Under §1983- Civil action for deprivation of rights the criteria defining the class being discriminated against must be invidious. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Women constitute a protected class under §1985 Liberstad v. Welch 53, F3d 428,449 (1st Cir 1995).

150.    This case meets the criteria § 1983 and §1985 for the stated claimed relief. The Plaintiff is a member of a class, the female gender, that meets the criteria of invidious discrimination. The alleged 5 conspirators under color of state flag took and did not

take actions to inflict unconstitutional injury (the violation of her 14th Amendment Rights), that furthered the goals to cover-up fraud against the court and cause financial damages to the Plaintiff.

## GENDER BIAS

151. The 1989 Massachusetts Supreme Judicial Court Gender Bias report states that females are frequently given less of the marital estate combined with fewer resources and greater childcare responsibilities. That is what happened in this case due to the fraud against the court perpetrated by the ex-husband combined with the Trial Judge copying the ex-husband's proposed findings in a very contentious divorce.

152. In the Spring of 2006, the Plaintiff had a meeting with Ms. Erin Shapiro, Esq., an attorney at Atwood Cherney, who said the Trial Judge in Streeter v. Streeter did not like women, that she had an upcoming trial with that Trial Judge and was glad that her client was male. In speaking with other females who had appeared before the Trial Judge, a pattern of actions that benefited males at the expense of females emerged, consistent with gender bias against women. Gender bias would explain why Trial Judge chose to copy Mr. Streeter's proposed findings. There is no evidence that anything has been done to protect female litigants appearing in front of the Trial Judge from 2006 to the present from gender bias.

153. Gender bias included the attempt to discredit the Plaintiff starting with the Trial Judge who copied Mr. Streeter's proposed findings that found the Plaintiff unreliable when she was claiming something that were inconvenient to Mr. Streeter as detailing in the Pleadings with Particularity pages 42-52.

154.   Great deference is afforded to trial judges exercise of discretion. Article 1 § 102. are
       There is no clear criteria with which the reliability of a litigants is assessed, such that
       a review of findings by a trial judge with regard to credibility have no process for
       correction. In <u>Streeter v. Streeter</u>, the Trial Judge had a reputation for being biased
       against female litigants and could not independently recall anything about the case
       and therefore could not form an independent decision regarding the reliability of the
       Plaintiff, 11 months after the end of the trial when the Divorce Nisi was issued. To
       address this deficit, the Trial Judge chose to copy Mr. Streeter's proposed and self-
       serving findings that the Plaintiff was not reliable. The defamation of her character by
       the Trial Judge prevented the Plaintiff from making her case as other judges relied on
       the Trial Judge's findings that she was not reliable. The most recent evidence was in
       the November 23, 2022 hearing with Judge Gargas when the Plaintiff requested the
       comment in the 2022 Dismissal with Prejudice that the Plaintiff's comments were not
       based in reality be corrected, as the Plaintiff comments were supported by 20
       Appendices and Exhibits. During this discussion, Judge Gargas admitted to coping
       the findings of previous judges and to date has not corrected the comment about the
       Plaintiff's comments not being based in reality.

155.   The Divorce Nisi findings were not supported by the evidence. Accordingly, a de
       novo reviews of the Streeter Matters in this complaint is requested, especially with
       regards to the Plaintiff's reliability.  The Plaintiff is an academic physician with over
       20 years of National Institute of Health fundings, numerous peer reviewed
       publications and no marks on her medical record. The only time that she has been
       found unreliable is when her ex-husband's proposed findings are copied.

156.   The combination of deference to the Trial Judge to determine the reliability of the litigants, whose findings regarding the reliability of the Plaintiff were completely copied from her ex-husband in a very contentious divorce, 'improperly influencing the trier or unfairly hampering the presentation of the opposing parties claim or defense. " <u>Sabin v. Sabin</u>. 435 Mass. 369. 405 (2002), citing Mass R. Civ. P. 60 (b), <u>MacDonald v. MacDonald</u> 407 Mass. 196, 202 n. l 0 (1990). 405-406.

157.   Gender bias manifested by attempts to discredit the Plaintiff by Mr. Streeter, the Trial Judge who copied Mr. Streeter' findings, Judge Donnelly consistent attempt to avoid addressing the Plaintiff's charge of fraud against the court and Judge Gargas who stated in court that she copied from other judges. There is no way to correct a judge's findings with regard to reliability. Mr. Streeter's attempts to neutralize the Plaintiff included unsubstantiated claims that she was not reliable, mentally ill, not satisfied with a judgment that was represented as fair and equitable when it excluded the majority of the marital estate from division, and angry such that her complaints could be dismissed. These tactics are part of the gender bias play book.

158.   In 1990, the Gender Bias Report of the Court System of Massachusetts reported gender bias exists in many forms throughout the Massachusetts court system with women suffering tremendous negative economic consequences following the dissolution of a marriage. Throughout the country the women's standard of living consistently decreases more than men's after a divorce because women are let with a disproportionately large share of the cost of raising the children and a disproportionally small share of the marriages wealth and earning power. These results are observed in <u>Streeter v. Streeter</u>.

159. The Plaintiff was assigned a larger share of the cost of raising the children. Mr. Streeter's child support, which was characterized as generous, paid for 65% of childcare and left the Plaintiff to pay for the rest of childcare, and all other costs (e.g., the mortgage, health insurance, food, utilities, transpiration, clothes, toys ect). While Mr. Streeter's findings claimed the level of childcare allowed the Plaintiff to maintain her standard of living, there was a $50,000 annual deficit, due to the cost of childcare.

160. The Divorce Nisi did not consider the following: (1) the $31,000 annual cut in salary the Plaintiff took in 1989, in order to take care of the parties children, (2) females were paid one-third less than men for the same job on average, and (3) such that females have less assets at retirement due to lost wages due to childcare, greater costs with regards to raising children and lower pay for the same jobs.

161. Due to the erroneous exclusion of trust assets from the division of the marital estate, the offset of Mr. Streeter's estimated inheritance against the Plaintiff's increased equity in the house resulted in her being given two cents for every dollar Mr. Streeter could expect to inherit. This is consistent with gender bias.

162. Gender bias is manifested at the national level as documented by the US Census that documents 6/7 custodial parents are female with less than 50% of ordered child support paid. In this case, Judge Donnelly, Judge Allen and now Judge Gargas have all failed to enforce the Final Arbitration Award order regarding educational costs and penalties.

163. In anticipation of the argument that the last two judges were female so how could they practice gender bias, it is stated that their supervisor is Judge John Carney is a male and that institutional betrayal values loyalty to the institution.

## CONSPIRACY OF FIVE JUDGES

164. **The First Judge**-the Divorce Trial Judge: The Honorable Judge William F. McSweeny, Jr., was unable to recall a single fact about the divorce trial himself such that he could not function as the finder of fact or produce a ruling that was the product of his own work. Instead, he decided to copy verbatim 460 items from those proposed by the Respondent and the proposed Divorce Judgment, with 7 generic changes presumably to claim the ruling was the produce of his own work.

165. **The Second Judge**: The Honorable Judge Edward F. Donnelly, Chief Justice of the Probate Court, did not address the Motions to Vacate and Correct the Divorce Judgment under Rule 60 (b)(3) and (d) from 2015 to 2019.  In 2015 when the Plaintiff filed the Motions to Vacate and Correct the Divorce Judgment, Judge Donnelly had "skin in the game" and a personal reason to suppress the charge of fraud against the court as he had taken no prior actions regarding complaints filed in 2013 regarding the Streeter v. Streeter divorce. The second reason to avoid a trial on the merits of the case, was to avoid having to correct the Divorce Judgment and any rulings that relied on the finality of the Divorce Judgment, such as the Final Arbitration Award.  Due to Judge Donnelly's failure to docket motions filed with the court and issue rulings, the Plaintiff filed a the first of three petitions for relief under M.L. G. c. 211.3. Under pressure from the Assistant Attorney General and after three extensions, on March 25, 2019 Judge Donnelly issued 11 writs and then retired. The first of the March 25, 2019 writs was the 2019 Dismissal with Prejudice. This allowed the next 10 writs to be based on a Divorce Judgment was declared final, by dismissing with prejudice the charge of fraud against the court without a trial. From 2019 to 2023, the Probate

Court by not disposing of the April 9, 2019 Motion has prevented due process and the appeal of the 2019 Dismissal with Prejudice, such that the rulings of the Probate Court are not reviewed by the Upper Court.

166. **The Third Judge:** The Honorable Judge Jennifer Allen was assigned to the Streeter Matters (Streeter v. Streeter (MI01D0619DV), and the Guardianship Re: Lillian Conway Streeter (MI15P0439GD) from around August 2019 to April 2020. Judge Allen had three choices, (1) to overturn the rulings of the ex-Chief Justice in cases that she did not participate, (2) to make rulings that were not supported by the facts in evidence, or (3) to do nothing. Judge Allen issued primarily procedural rulings and avoided rulings that would require her to address corrections to Judge Donnelly's rulings. Judge Allen left 24 motions without rulings when she was transferred to another jurisdiction.

167. **The Fourth Judge:** The Honorable Judge Melanie Gargas was assigned to the Guardianship Re: Lillian Streeter and to the Educational Contempt at the time of the April 21, 2020 hearing. At the hearing she said that she was not responsible for motions in Streeter v. Streeter that had been assigned to Judge Allen. This meant there was no judge to address outstanding motions in Streeter v. Streeter, especially the April 9, 2019 Motion, such that an appeal of the 2019 Dismissal with Prejudice could neither proceed to trial or appeal.

168. **The Fifth Judge:** The Honorable Judge John Casey, Chief Justice of the Probate Court, was listed as the Defendant on the Plaintiff's 2rd and 3th petition for relief under M.L. G. c. 211.3 that requested that he assign judges to address the outstanding Streeter Matters that were preventing due process and appeal. On March 8, 2021, the

45

Supreme Judicial Court issued its ruling. Two days later on March 10, 2022, Judge

Gargas issued the 4 rulings, three in <u>Streeter v. Streeter</u> and one in the <u>Guardianship</u>

<u>Re: Lillian Conway Streeter</u>. It appears that Judge Carney assigned Judge Gargas to

the <u>Streeter v. Streeter</u> Divorce, although no notice of this was provided to the

Plaintiff, nor were copies of the March 10, 2022 rulings in violation of Rules 5 and 77

(d).

169.    There is concerns that Judge Carney did not communicate to Judge Gargas the need

to address the April 9, 2019 motion but did communicate the need to stop the

litigation in the Streeter Matters regardless of the Plaintiff's rights to due process or

the need to address the fraud against the court that is undermining the integrity of the

judiciary.

## EQUAL PROTECTION VIOLATED

170.    "The Equal Protection Clause the 14[th] Amendment contemplates that similarly

situated persons are to receive substantially similar treatment from their

government." <u>Tapalian v. Tusino</u>, <u>377 F.3d 1, 5</u> (1st Cir. 2004). This has not

happened in <u>Streeter v. Streeter</u> starting with the Trial Judge being 100% dependent

on Mr. Streeter's proposed findings, with no consideration of the Plaintiff's proposed

findings. This inequitable treatment has continued for over a decade, with the most

recent inequitable treatment being the failure of the Court to address for 6 years, the

Plaintiff's Educational Contempt, while simultaneously addressing Mr. Streeter's

Complaint for Contempt regarding the sale of the Farmcrest Property with in 6 weeks

by making a ruling of contempt and forcing the sale of the Farmcrest Property when

Mr. Streeter's estimated equity in the Farmcrest property is less than he would owe

due to unpaid educational costs and penalties or the correction of the Divorce Judgment.

171.    The Probate Court's failure to address the motion for a stay on the sale of the Farmcrest Property for the multiple reasons stated above, is another example of bias and possibly retribution for the Plaintiff insisting on her rights under the 14th Amendment.

## JUDICAL IMMUNITY

172.    In 1872, the Supreme Court of the United States that found, "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but, rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction," Bradley v. Fisher, 13 Wall. 335, 80 U. S. 351. Pp. 435 U. S. 355-357.

173.    In Stump v Sparkman, the United States Supreme Court reviewed its position on judicial immunity.

> "As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, supra, at 347. 5 For that reason the Court held that "judges [435 U.S. 349, 356] of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly." 6 13 Wall., at 351. Later we held that this doctrine of judicial immunity was applicable in suits under 1 of the Civil Rights Act of 1871, 42 U.S.C. 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle. Pierson v. Ray, 386 U.S. 547 (1967)." Stump V. Sparkman, 435 U.S. 349 (1978)

174.    42 U.S.C. 702 allows for the United States to be listed as the Defendant, thus allowing both relief to the Plaintiff while also avoiding the need to list a judge as a Defendant in a civil action.

## VIOLATION OF THE JUDICIAL CODE OF CONDUCT

175. While judicial immunity prevents a judge from being sued as the Supreme Court of the United States has found ("immunity is essential to impartial decision-making and to **engendering public trust in the judiciary**")(emphasis added). <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).

176. The issue of judicial immunity is not being challenged. However, it is argued that having no avenue of relief for litigants who experience judicial behaviors that are damaging to them and violate of the Judicial Code of Conduct does not engender public trust in the judiciary, as absolute power corrupts absolutely.

177. In this case it is alleged that there are numerous instances where the judges listed above have violated the following sections of Judicial Code of Conduct 1.1, 2.2, 2.3, 2.6, 2.7, 2.12, 2.15 and 2.16 with no observable consequences due to the opaque procedures of the Committee for Judicial Conduct and the low rate of public sancture.

178. The violation of the Judicial Code of Conduct lead to the following laws being violated: Rule 5 (e), Rule 26, Rule 410, M. G. L. c. 211.3, M.G.L. c. 203E, and the 14th Amendment.

179. **ABUSE OF JUDICIAL DISCRETION TO PREVENT DUE PROCESS**

180. The evidence supports that the judges involved in the alleged conspiracy and gender bias abuse their judicial discretion to prevent due process in a biased manner that benefits Mr. Streeter and the cover up at the expense of the Plaintiff.

    a) Failure to docket motions so there is no judicial record

    b) Requiring permission to file so there is no judicial record

    c) Failure to dispose of motions filed with the court

**d)** Failure to make timely rulings, as rulings are frequently delayed for years in a manner that benefits

**e)** Failure to accept the Final Arbitration Award for 4 years

**f)** Failure to enforce orders

**g)** Failure to provide service of rulings made when the litigants are not in court

**h)** Failure to allow discovery of the Streeter Trust records

**i)** Dismissal with prejudice when criteria for dismissal was not met

<h2 style="text-align:center">PLEADINGS WITH PARTICULARITY</h2>

181.  The Pleadings with Particularity filed with the Judge Donnelly on August 11, 2015 was not filed in 2015 in violation of Rule 5 (e ), it was not filed in 2018 in response to the M.G. L. c 211.3, or 2019 in the Court Dockets filed by the Assistant Attorney General, it was finally filed in 2021, after Judge Donnelly retired.

**182.**  The failure to docket the Pleadings with Particularity result in a document that is required under Rule 9 not being available for appellate review, such that  no one other than Judge Donnelly would be able to evaluate the content of the Pleadings with Particularity to determine if it was sufficient to support the Plaintiff's request for relief.

183.  Spoliation of evidence includes the intentional negligent withholding, hiding, altering, or fabricating evidence relevant to a legal matter, it is alleged that all are present in Streeter v. Streeter including the creation of Exhibit 87, failure to allow the discovery of the Streeter records, not filing the Pleadings with Particularity. Judge Donnelly's actions could be taken as evidence of "consciousness of guilt" as it is argued that the Pleadings with Particularity combined with the identification of the Streeter Trust

records do provide the evidence required to support the charge of fraud against the court and the correction of the Divorce Nisi. The requirements needed for a dismissal, let alone a dismissal with prejudice of the Motions to Vacate and Correct the Divorce Judgment were not met.

### 14TH AMENDMENT RIGHTS DENIED DUE TO MARCH 10, 2022 RULINGS

184.  The March 10, 2022 Memorandum of Decision and Order includes the following erroneous conclusions:

   a)  It cites the 2019 Dismissal with Prejudice as evidence that the Plaintiff did not present adequate evidence, while at the same time attempting to prevent an appeal of the 2019 Dismissal with Prejudice by dismissing with prejudice the premature Notice of Appeal Re: the 2019 Dismissal with Prejudice.

   b)  It fails to dispose of the April 9, 2019 Motion under Rule 60 that is preventing the time to file an appeal regarding the 2019 Dismissal with Prejudice from starting to toll.

   c)  It ignores that there is an automatic stay under Rule 62 (a)  regarding the 2019 Dismissal with Prejudice that claims the Divorce Judgment is based on fraud against the court and therefore not final.

   d)  It found the Plaintiff in contempt for not cooperating with the sale of the Farmcrest Property when there was an automatic stay in place.

   e)  The November 23, 2022 in-court and January 6, 2023 written ruling of contempt did not consider that the Plaintiff had not been informed of the March 10, 2022 ruling until November 11, 2022

f) The January 6, 2023 ruling of contempt did not consider that there was no evidence that Mr. Streeter asked the Plaintiff for her cooperation with the sale of the Farmcrest Property from March 10, 2022 when Judge Allen's stay was lifted and that the Plaintiff received his Motion for a Judgment on his Complaint for Contempt on November 11, 2022.

g) The force sale of the Farmcrest Property, when Judge Gargas has failed to address that both the 2019 Dismissal with Prejudice of the Motions to Vacate and Correct the Divorce Judgment and the Educational Contempt that are alleged to result in Mr. Streeter having no equity in the Farmcrest Property or owe more in educational costs and penalties than his equity in the Farmcrest Property.

h) The forced sale of the Farmcrest Property will cause irreparable harm to the Plaintiff and yet Judge Gargas has failed to address the motion for a stay, such the a stay had to be filed in the Appellate Court.

i) The temporal relationship of the Supreme Judicial Court ruling on March 8, 2022 and the four March 10, 2022 rulings suggests a communication between Judge Carney and Judge Gargas regarding the need to stop litigation in Streeter v. Streeter.

j) There is concern that the need to dispose of the April 9, 2019 Motion does not seem to have been communicated to Judge Gargas by Judge Carney, such that the March 10, 2022 rulings violate the Plaintiff's due process rights.

## **CONCLUSIONS OF LAW**

206.  There is a balance between justice must be done and estopple or res judicata. In this case there is no statute of limitations for fraud against the and a judgment based on

fraud against the court will never be final under Rule 60. Accordingly, justice must be done via a trial on the merits of the case to determine if fraud against the court occurred and the Divorce Judgment needs to be corrected.

207.   Invidious discrimination in the form of gender basis is present.

208.   The four components of conspiracy under §1985 (3) have been met such that relief under  §1983 is available in the form of declaratory rulings and injunctions.

209.   The Plaintiff's 14th amendment rights have been violated by officers of the court.

210.   This complaint can be filed listing the United States as the Defendant under § 701 and §702

## REQUESTED RELIEF

### PRAYER

WHEREFORE, the Plaintiff requests this Court issue the following:

### DELARATORY RULINGS

1.   Under Rule 26 Discovery, the Plaintiff is entitled to subpoena the following:

   a.   The Streeter Trust records from 1992 to the present including all communications and quarterly trust reports. None of these documents are privileged

   b.   Mr. Streeter's bank records from 1992 to the present.

   c.   The Nathaniel T. Dexter Estate Accounting.

2.   There is sufficient evidence to make the finding of fraud against the court by the Defendant's listed on the Motions to Vacate and Correct the Divorce Decree.

3.   There is evidence that Mr. Streeter falsely decreased or eliminated the value of assets that would be assigned to him, while increasing the value of assets that would be assigned to the Plaintiff for which he should receive no benefit.

4. Under <u>Bell v. Twomey</u>, the Plaintiff's Motions to Vacate and Correct the Divorce Judgment should not have been dismissed with prejudice, such that the Plaintiff is entitled to a trial in the Probate Court to correct the Divorce Nisi and Divorce Judgment including but not limited to the corrections listed below.

5. The Plaintiff has requested a correction of the Divorce Judgment, not a new trial.

6. The Probate Court is required under the law to dispose of the April 9, 2019 Motion.

7. The Plaintiff is entitled to have the rulings in the Probate Court regarding the monetary damages in these declarative rulings so that the Defendant's listed in the Motions to Vacate and Correct the Divorce Judgment receive no benefit from the fraud against the court.

8. The Divorce Trial Judge committed fraud against the court when he did not perform his duties required as the Trial Judge.

9. The Deference to the Trial Judge should be suspended in this case as he was completely dependent on Mr. Streeter's proposed findings.

10. The <u>Streeter v. Streeter</u> case shows evidence of gender bias that violates the 14th Amendment.

11. The <u>Streeter v. Streeter</u> case shows evidence of unequal treatment that violates the 14th Amendment.

12. The <u>Streeter v. Streeter</u> case shows evidence of conspiracy between the judges

13. The <u>Streeter v. Streeter</u> case shows evidence of financial damage to the Plaintiff.

14. The <u>Streeter v. Streeter</u> case shows evidence of damage to the Plaintiff due to the delays of the Probate Court in disposing of motions filed.

15. The _Streeter v. Streeter_ case meets the requirement for relief under 4. U. S. C. 1983 and 1985.

16. The _Streeter v. Streeter_ case shows evidence of violation of the Judicial Code of Conduct.

17. Due to the Trial Judge's complete dependence on Mr. Streeter's proposed findings, he did not consider Mr. Streeter's violent conduct in front of the parties children, the three 209A orders obtained by the Plaintiff or what was in the best interest of the children given his obstructive behavior regarding the son's medical treatment.

18. For the reasons stated above, the Divorce Judgment should be changed to award the Plaintiff sole legal custody of the parties children.

### CORRECTION OF DIVISION OF MARITAL ASSETS

19. Mr. Streeter's proposed findings (Divorce Nis Finding 124) states the stipulated value of the marital home was $1,737,500 with a mortgage of $403,023 (the actual mortgage was $409,000) for an equity of $1,334,477. When placing the value of the marital home in the Table of marital assets in the Divorce Judgment, Mr. Streeter changed a 3 to an 8, so that the value of the marital home in the division of marital assets was increased by $56,000 ($6,000 for the falsely decreased mortgage and $50,000 for changing the 3 to an 8) or $1,384,447 instead of the correct value of $1,328,477. This was corrected in the Table above.

20. Mr. Streeter inherited $1,435,846 from his father. In the Divorce Judgment Table of Assets, he is credited with $314,000 as his inheritance and for devaluation of the Overhang Property from $94,000 to $42,400 and from the devaluation of the Bungy Head property from $249,000 to $94,000 as noted in a footnote. Accordingly, $915,246 of his inheritance was not considered in the division of marital assets ($1,435,846 - $314,000 –

$94,000 + $42,400 - $249,000 + 94,000$). The was due to fraud against the court, such that $915,246 should be given to the Plaintiff.

21. While the devaluation of the Overhang property is acceptable because it is held as a corporation and could not easily be sold. The devaluation of the Bungy head property is not acceptable as it was valued at $740,000 in the Estate of Henry Streeter and sold for $750,000.

22. The value of Mr. Streeter's inheritance from his father minus the full value of the Bungy Head property plus the devalued Overhang Property is $1,384,080 ($1,435,846 – 94,166 + 42,400$). This value will be used for his inheritance in the corrected Table.

23. The value of the Plaintiff's inheritance from her aunt, Alma Dowdell-Smith is listed as $681,385 due to taxes.

24. The value of Mr. Streeter's inheritance from his uncle, Nathaniel T. Dexter currently estimated to be $120,000 without wine and listed in the inheritance section of the Table.

25. As the repayment of loans from the parties inheritance is not required, therefore their inheritances are not reduced by any loans claimed.

26. The corrected value of the marital estate including the parties inheritances received during the marriage is $ 4,233,439.

27. If the Plaintiff were given 65% of the marital estate, an increase of 8% from 57% which did not consider her greater care for the children in the division of assets, the full value of the house, the Plaintiff's assets listed in the original table, her corrected inheritance from her aunt and the mortgage would be $2,731,562 ($1,328,447 +312,730 + $681,385 + $409,000) less than her share of the marital estate of $2,745,235 at 67% shown in the corrected Table of marital assets.

Table Division of Marital Assets

| ASSET | ORIGINAL | | | CORRECTED | | |
|---|---|---|---|---|---|---|
| | HUSBAND | WIFE | JOINT | HUSBAND | WIFE | JOINT |
| Marital Home (equity) | | | $1,384,477 | | | $1,328,477 |
| Hawaiian Acres | $9,300 | | | $9,300 | | |
| Kapoho Palms | $170,000 | | | $170,000 | | |
| Overhang, Inc. | $42,400 | | | $42,400 | | |
| NTD Fine Arts Trust | $100,000 | | | | | |
| Tax refund | $14,500 | | | $14,500 | | |
| TIAA-CREF pension | | $52,014 | | | $52,014 | |
| Fleet checking and savings | <$1,300> | $5,354 | | <$1,300> | $5,354 | |
| Fidelity IRA | $34,000 | $32,530 | | $34,000 | $32,530 | |
| **IRA** | | $1,757 | | | $1,757 | |
| TIAA-CREF | | $175,528 | | | $175,528 | |
| Mass. Def. Comp, | | $803 | | | $803 | |
| Federal Retirement | | $44,744 | | | $44,744 | |
| Met Life Stock | $8,110 | | | $8,110 | | |
| Fidelity Brokerage | $23 | | | $23 | | |
| Met Life Ins. | $15,411 | | | $15,411 | | |
| High Tick Trading | $456 | | | $456 | | |
| Ropes & Gray Acct. | $3,867 | | | $3,867 | | |
| Totals | $396,767 | $312,730 | $1,384,477 | $396,767 | $312,730 | $1,328,477 |
| Total marital enterprise subj. to division original/corrected: $2,093,974/$2,037,974 | | | | | | |
| Inheritance- loans | $314,000 | $500,000 | | | | |
| Inheritance H Streeter | | | | 1,384,080 | | |
| Inheritance N. Thayer | | | | $120,000 | | |
| Inheritance A.-Dowdell-Smith | | | | | $681,385 | |
| Total marital estate subj. to division original/corrected with inheritance: $2,907,974/$4,223,439 | | | | | | |

28. Awarding the Plaintiff 65% of the corrected marital estate, would have allowed her to pay off the mortgage. Accordingly, all mortgage and interest payments made by the Plaintiff from February 6, 2006 to the present should be awarded to the Plaintiff with interest as damages due to the fraud against the court.

29. In summary due to fraud against the court, the Plaintiff would be entitled to the following
corrections to the Divorce Judgment:

    a.  The $ $915,246 from Mr. Streeter's inheritance from his father that was falsely
excluded from the marital estate.

    b.  The increase of the Plaintiff's percentage of the marital estate to 67% due to her
care of the parties children that was not previously considered.

    c.  The Plaintiff is entitled to receive reimbursement for all mortgage and interest
payment made by the Plaintiff since February 6, 2006 until payment is received
with interest.

### CORRECTION OF TRUST ASSETS

30. Mr. Streeter should receive no benefit from making a claims on his proposed fundings
that were submitted under penalty of perjury that did not comply with after his proposed
findings and judgment that were copied by the Trial Judge.

31. The following claims made in the Divorce Nisi claims should to be enforced.

    a.  As Mr. Streeter has denied the use of any principal/loans from the 1973, 1976 and
1987 Streeter Trusts since 2003, all principal that Mr. Streeter received after 2003
from the 1973, 1976 and 1987 Streeter trust with the growth that would have
occurred if principal had not been distributed will be put into a new trust for the
benefit of Nathaniel and Lilly Streeter.

    b.  Going forward, Mr. Streeter will not receive any principal from the 1973, 1976
and 1987 Streeter trusts, specifically no principal from the real estate in the 1976
trust.

    c. Consistent with the Divorce Nisi, Mr. Streeter may receive interest from the 1976 and 1987 Streeter Trust, as the 1973 Trust has been terminated.

32. The following are examples of fraud against the court for which Mr. Streeter should receive no benefit:

    a. The denial of current income from the 1973 Streeter Trust and Kaufman Trust

    b. The enforceable right to principal from:

        i. The Kaufman Trust

        ii. Trust Under the Will of William Dexter

        iii. Nathaniel Dexter Trust of 1949

        iv. the William Dexter Children's Trust for the benefit of Mary Ann Streeter

33. All income with interest from 2003 to the present from the 1973 Streeter Trust and Kaufman Trust will be given to the Plaintiff.

34. All principal that Mr. Streeter will eventually receive from the trust with enforceable right to principal should be assigned to the Plaintiff due to Mr. Streeter misrepresentation of these trusts in his proposed findings.

### INEQUITABLE TREATMENT AND FAILURE TO ENFORCE RULINGS

35. The Plaintiff's request for a Special Master to enforce the Final Arbitration Award regarding the educational costs and penalties with interest should be honored.

36. If Mr. Streeter is found in contempt for the non-payment of educational costs, the determination total costs, penalties and interest due should be calculated and provided to the Plaintiff in cash, with penalties and interest accruing until full payment is received.

37.     The parties may appeal the Special Master's report regarding the Educational

        Contempt.

        **EQUITY REDUCTION RE: DELAY IN SELLING LAKEVIEW PROPERTY**

38.     Mr. Streeter's attempt to get equity from the sale of the Lakeview property resulted in

        a delay that reduced the equity from the sale of the property by around $300,000. If

        his equity in the Lakeview property is reduced to zero by the correction of fraud

        against the court, he would not have been able to delay the sale of the Lakeview

        Property such that the Plaintiff would be eligible for damages equivalent to the

        reduced equity at the time of sale.

                                    **LEGAL FEES**

39.     The attorneys listed as Defendants should not benefit from the fraud against the court

        by the receipt by their respective law firms of payments related to Streeter v. Streeter.

        The equivalent of payments received for such legal fees should be given to the

        Plaintiff.

40.     The Plaintiff should be reimbursed for all legal fees charged to her during the divorce

        trial, appeal and arbitration due to fraud against the court.

41.     It is not equitable for only a litigant who is represented by counsel to receive

        compensation for time and costs related to Streeter v. Streeter, with the pro se litigant

        ineligible for such compensation under the claim that the costs incurred are not legal

        fees and with no consideration to the cost of the Plaintiff's time.

42.     The Plaintiff should be given the equivalent to what Mr. Streeter has paid in legal fees

        related to Streeter v. Streeter since 2014 when the Plaintiff started to represent herself

        as a pro se litigant.

43.    Short of clearly veracious or frivolous litigation, the Plaintiff shall not be charge for Mr. Streeter's legal fees when she cannot afford to pay for her own representation.

## INJUNCTIVE RELIEF

44.    Injunction on the sale of the 47 Farmcrest Avenue, Lexington Massachusetts house until all issues regarding the charge of fraud against the court and the correction of the Divorce Judgment are resolved.

45.    Injunction on the sale of the 47 Farmcrest Avenue, Lexington Massachusetts house until all issues regarding the Educational Contempt are resolved.

46.    Injunction on the sale of the 47 Farmcrest Avenue, Lexington Massachusetts house until the appeal of the January 6, 2023 contempt is resolved.

47.    Injunction against any restriction on the Plaintiff's ability to file motions with the Probate Court, unless the Court issues a clear ruling as to what actions resulted in the restrictions to filing, why the restriction is not a violation of the Plaintiff's right to be heard, and a specific plan that is to be reviewed by the Plaintiff before being filed.

48.    Injunction against the remove the Plaintiff as a co-guardian until the determination of whether the Plaintiff should have been awarded sole legal custody in 2006

49.    As required by §702, the injunctive relief lists the Federal Judge assigned to this case as being responsible for overseeing the compliance with the injunctions.

50.    AND SUCH OTHER RELIEF AS THIS COURT DEEMS JUST AND FAIR.

Digitally signed by Chris Streeter
Date: 2023.03.27 16:15:24 -04'00'

Respectfully Submitted
Signed Under Penalty of Perjury by
Chris Streeter, Pro Se
47 Farmcrest Ave., Lexington, MA 02421
617-688-6422, ccstreeter@verizon.net
March 27, 2023

60

## CERTIFICATE OF SERVICE

I, Chris C. Streeter, hereby certify than on this 27th day of March 2023, I have served a true copy of this document by first class mail and email to:

James J. Richard
The Law Offices of James J. Richards, LLC
161 Worcester Road
Suite 309
Framingham, MA 01701

_____
Chris C. Streeter

61